## 66347. SPLISH SPLASH WATERSLIDES, INC. v. CHEROKEE INSURANCE COMPANY.

BIRDSONG, Judge.

This is an appeal from the grant of the motion for summary judgment of appellee/insurer in this action instituted by appellant on a policy of hazard insurance covering property on which appellant apparently operated a waterslide. The trial court, in a lengthy order, found that appellant had no insurable interest in the property in question on the date it was destroyed by fire. Appellant enumerates sixteen alleged errors in the judgment action of the trial court, primarily challenging the court's findings of fact and contending that the case presents a genuine issue of material fact concerning appellant's alleged insurable interest in the subject property.

The trial court found the following facts to be undisputed. Pursuant to a lease beginning September 29, 1980, and ending September 15, 1981, appellant leased the subject premises from Fostin Securities, Inc. (hereinafter referred to as "Fostin"). Fostin transferred all of its interest in the property and the lease to Ras H. Cleveland Company, J. R. Cleveland Company, and L. W. Cleveland Company (hereinafter collectively referred to as "Cleveland") on September 29, 1980. Pursuant to a lease beginning September 16, 1981, and ending September 15, 1982, Cleveland leased the subject premises to Lonnie E. Watson. On the same date the latter lease was executed, Watson executed a document purporting to assign to appellant all of his interest in that lease. On September 16, 1981, appellee issued to appellant the subject hazard policy covering the subject property, with aggregate limits of $60,000 on two buildings and $2,500 on personalty. Two buildings on the property and certain personalty apparently were destroyed by fire on October 12, 1981. Although not specifically included in the trial court's findings, the affidavits before it showed without dispute that appellant occupied the premises on the date the buildings were destroyed by fire.

The trial court found that the Cleveland-Watson lease contained no clause permitting Watson to transfer or assign his interest. Appellee produced the affidavit of Fred A. Harkleroad, the agent and officer of Cleveland in charge of the management and leasing of the subject property, who deposed that there was no written or oral agreement between Cleveland and Watson giving the latter the right to assign his interest in the Cleveland-Watson lease. He also stated that Cleveland believed Watson was in possession of the premises after September 15, 1981, and that Cleveland was unaware either of any claim of interest by appellant or of Watson's purported assignment to appellee. Harkleroad further deposed that

at no time did Cleveland acquiesce in the assignment.

In opposition to the motion, appellant produced the affidavits of both its officer, Lee Summer, and Watson. These affidavits established that Watson did execute an assignment of his interest in the lease. Watson and Summer both stated that Summer was present on September 14, 1981, when Harkleroad and Watson executed the subject lease, and that funds for the entire rent due under the lease were paid by appellant. Appellant also produced the affidavit of its attorney, who stated that Cleveland had made demand upon appellant and Watson after the loss for compensation for property damage pursuant to the lease. The trial court earlier denied an attempt by Cleveland to intervene based in part on the ground that it was a third-party beneficiary under the insurance policy between appellant and appellee. Cleveland alleged in its proposed complaint that Watson had assigned to appellant his interest in the lease and that appellant was responsible pursuant to the lease for damage to the buildings.

After hearing, the trial court concluded that the assignment between Watson and appellant was "ineffective and invalid" due to lack of consent by appellee, that appellant had no insurable interest in the property, and that appellant was not entitled to recover under the insurance policy issued by appellee.

Appellant's enumerations of error challenge eleven specific findings of undisputed fact by the trial court. Two other enumerations challenge, upon different theories, the conclusion that appellant had no insurable interest. Appellant also enumerates as error the sub silentio denial of its motion to strike appellee's supplemental brief, motion to consider additional evidence, and motion for reconsideration. However, after careful analysis, the three key issues raised by appellee's motion and the facts developed in connection with that motion can be characterized as follows: (1) Is appellee entitled to defend the claim based on lack of insurable interest and place into issue the legal effectiveness of the lease assignment; (2) Under Georgia law, what constituted an insurable interest in the subject leasehold property; and (3) Was the lease assignment from Watson to appellant ineffective as a matter of law?

1. Appellant argues in its second enumeration of error that appellee lacks standing to raise the issue concerning the effectiveness of the lease assignment. However, an insurer may raise lack of insurable interest as a defense to a claim under a policy of insurance covering fire loss. *Townsend v. Morris,* 222 Ga. 242, 243 (149 SE2d 464). To the extent that the validity of the assignment relates to appellant's insurable interest in the subject property (see Division 2, infra), this collateral issue may be raised by appellee in defense to the

claim under the policy. See, e. g., *Gordon v. Gulf American Fire &c. Co.,* 113 Ga. App. 755 (149 SE2d 725) (wherein an insurer raised the insured's lack of title, and therefore insurable interest, in a stolen vehicle as a defense to a policy claim).

2. An insured must have an insurable interest in covered property in order to enforce a contract of insurance on that property. OCGA § 33-24-4 (a) (Code Ann. § 56-2405). Throughout its enumerations of error and brief, appellant questions the standard applied by the trial court in determining whether appellant had an insurable interest in the subject property. "[I]nsurable interest means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." Id. " ' "The test of insurable interest in property is whether the insured has such a right, title, or interest therein, or relation thereto, that he will be benefited by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury by the peril insured against." ' " *American Reliable Ins. Co. v Woodward,* 143 Ga. App. 652, 653 (239 SE2d 543). See also *Allstate Ins. Co. v. Ammons,* 160 Ga. App. 257, 259 (286 SE2d 765).

However, it is clear that mere possession of property, although giving the possessor certain rights against a trespasser (see OCGA § 51-9-3 (Code Ann. § 105-1403); *Brown Store Co. v. Chattahoochee Lumber Co.,* 121 Ga. 809 (3) (49 SE 839)), is in and of itself not sufficient to constitute an insurable interest. Thus, in *Herrington v. American Security Ins. Co.,* 124 Ga. App. 617 (184 SE2d 673); *General Fire &c. Co. v. Kuffrey,* 115 Ga. App. 121 (1) (153 SE2d 590); *Gordon v. Gulf American Fire &c. Co.,* supra, and *Giles v. Citizens Ins. Co.,* 32 Ga. App. 207 (3) (122 SE 890), this court held that an innocent possessor of stolen property has no insurable interest in that property. Further, the possessor's interest is not changed merely because the lawful owner "is unable to assert [his ownership] until the whereabouts of his property has been located." Id. While title may not always be the determinative factor, *American Reliable Ins. Co. v. Woodward,* supra, the insured must have some *lawful* interest in property before he can have an insurable interest in the property, see, e. g., OCGA § 33-24-4 (a) (Code Ann. § 56-2405); *Canal Ins. Co. v. P&J Truck Lines,* 145 Ga. App. 545 (2) (244 SE2d 81), overruled on other grounds, *United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 238 (248 SE2d 635); *American Ins. Co. v. Bateman,* 125 Ga. App. 189, 192 (186 SE2d 547), although that interest may be "slight or contingent, legal or equitable." *Fenn v. New Orleans Mut. Ins. Co.,* 53 Ga. 578, 579 (1).

In the present case, appellee argues that appellant could not

have had any insurable interest in the subject real estate or buildings thereon absent an effective assignment of the Watson lease. We agree. Without a valid assignment, appellant "would be a mere intruder subject to be summarily ousted by the landlord." *Bass v. West,* 110 Ga. 698, 705 (5) (36 SE 244), see also *Ferguson v. Bank of the South,* 164 Ga. App. 203 (1) (296 SE2d 756). As such, appellant's legal status vis-a-vis this putatively insured property would be similar to that of a possessor of stolen property, see *Gordon,* supra; *Giles,* supra, and would be clearly distinguishable from that of a person without title possessing property under a legal right. Compare, e. g., *Canal Ins. Co. v. Woodard,* 121 Ga. App. 356 (1) (173 SE2d 727).

Although we have located no Georgia authority on point, we hold that a mere intruder or trespasser on the land of another has no insurable interest in that real estate or the buildings thereon. See generally, 44 CJS 878, Insurance, § 182. Consequently, appellant can claim no insurable interest in the realty buildings involved in this case unless Watson's lease was effectively assigned.

3. Alternatively, appellant argues that it retained the right to remove trade fixtures under its original lease with Fostin, and that this right remained at the time the property was destroyed, thus giving appellant an insurable interest in the property. However, appellant's right to remove its trade fixtures ended with the cessation of its possession of the property under the auspices of the landlord. *Powell v. Griffith,* 38 Ga. App. 40 (2) (142 SE 466). See also *Youngblood & Harris v. Eubank,* 68 Ga. 630, 633 ("the possession must be held under a right still to be considered the tenant of the lessor"). Unless Cleveland acquiesced in appellant's possession subsequent to the commencement of the Watson lease (see Division 4, infra), appellant was not in possession under the landlord. Consequently, the right to remove trade fixtures does not provide an independent basis for finding that appellant had an insurable interest in the subject property.

4. Thus, the central issue raised by appellee's motion for summary judgment is whether appellee has demonstrated that the purported lease assignment from Watson to appellant was ineffective as a matter of law. The trial court concluded that the assignment was ineffective beyond genuine issue and transferred no interest to appellant. We agree that the facts before the trial court negated the existence of a genuine issue of material fact concerning the efficacy of the assignment.

(a) "It is axiomatic that '(i)n summary judgments, all inferences, and all ambiguities, and all doubts, are resolved against the movant . . . and in favor of the party opposing the grant of

summary judgment.' [Cit.] This is true even where the party opposing the motion would have the burden at trial. [Cit.] The 'respondent's proof is treated with indulgence' [cit.], and vague or contradictory testimony must be construed in favor of the non-movant. [Cit.] Matters relating to the likelihood or probability of a non-movant [or a movant] carrying his burden at trial or the credibility of the evidence have no place in the summary judgment procedure. [Cits.]" *Whirlpool Corp. v. Hurlbut,* 166 Ga. App. 95 (1) (303 SE2d 284). It is against these general rules governing review of summary judgments that we test the propriety of the trial court's order in this case.

(b) OCGA § 44-7-1 (b) (Code Ann. § 61-101) provides that "[a]ll renting or leasing of real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, to pass no estate out of the landlord, and to give only the usufruct unless the contrary is agreed upon by the parties to the contract and is so stated in the contract." When the landlord conveys "the right simply to possess and enjoy . . . such real estate . . . no estate passes out of the landlord and the tenant has only a usufruct which may not be conveyed except by the landlord's consent and which is not subject to levy and sale." OCGA § 44-7-1 (a) (Code Ann. § 61-101). Thus, when a lease carries a term of less than five years and does not clearly indicate by its express terms that it passes an estate for years, the lease conveys a mere usufruct and is not assignable absent the express consent of the landlord. *Lawson v. Haygood,* 202 Ga. 501 (1) (43 SE2d 649).

(c) In the event of an unauthorized transfer or assignment of a lease, the landlord may by affirmative action elect to substitute the transferee or assignee for the original tenant. Id.; *Ihlanfeldt v. Courtney,* 132 Ga. App. 155 (2) (207 SE2d 653); *Garbutt & Donovan v. Barksdale-Pruitt Junk Co.,* 37 Ga. App. 210 (1) (139 SE 357). "'Where a landlord treats a lease as assigned, even though the original lessee had no right to assign it without his consent, he is estopped from setting up [as a defense] that the assignment of his contract is made without his consent.' [Cit.]" *Draper & Kramer v. Lerow,* 143 Ga. App. 413, 414 (238 SE2d 560). The landlord's election to recognize an unauthorized subtenant as his tenant "may be effected by an expressed recognition . . ., or it may be implied from such affirmative acts and conduct as will clearly indicate an intention on the part of the landlord to effect such a substitution. . . . [*Garbutt,* supra]." *Liberty Loan Corp. v. Leftwich,* 118 Ga. App. 383, 384 (163 SE2d 837).

(d) There is no merit whatsoever to appellant's argument that the lease in question authorized assignment by Watson. The lease contains no provision allowing assignment, and contains no provision

from which it can be inferred that the parties intended for the lease to be assignable without Cleveland's consent. A lease for less than five years passes no estate and may not be conveyed without the landlord's consent "unless the contrary is agreed upon by the parties to the contract and is so stated in the contract." OCGA § 44-7-1 (b) (Code Ann. § 61-101); *Warehouses v. Wetherbee,* 203 Ga. 483 (1) (46 SE2d 894). The Watson lease clearly granted Watson only a non-assignable usufruct.

(e) The decisive question concerning the propriety of the grant of summary judgment to appellee, then, is whether appellee has carried the heavy burden imposed by OCGA § 9-11-56 (Code Ann. § 81A-156) (see Division 4a, supra) in showing the absence of any genuine issue of material fact over the issue of whether Cleveland elected to accept the assignment. In other words, has appellee pierced appellant's allegation that it was effectively assigned Watson's interest in the lease, and, if so, has appellant produced or demonstrated facts sufficient to show a genuine controversy over this issue?

We agree with the trial court that appellee's evidence initially pierced the allegation that appellant had an insurable interest in the realty and buildings through the assignment. Harkleroad's affidavit demonstrates that Cleveland had no knowledge of the assignment and in no way authorized it or elected to treat appellant as its tenant. This evidence, standing alone with the Watson lease, would mandate the conclusion that the lease was not effectively assigned (*Rotruck v. Grandma's Biscuits,* 243 Ga. 512 (255 SE2d 36)), and that appellant had no insurable interest in the realty or buildings. See Division 2, supra.

We also agree that appellant has failed to demonstrate a genuine issue concerning the propriety of the assignment. Each of the facts adduced by appellant constitutes mere circumstantial evidence from which inferences inconsistent with Harkleroad's statements *may* be drawn. However, none of the evidence is necessarily inconsistent with Harkleroad's testimony. Even the fact that Cleveland has sought compensation from appellant, as well as Watson, or any other party with potential liability, for its loss is not inconsistent with Harkleroad's direct testimony on the issue of whether the assignment was recognized by Cleveland prior to and at the time of the loss. The uncontradicted and unimpeached testimony of Harkleroad cannot be rebutted by "a finding of fact which may be inferred but is not demanded by circumstantial evidence." *Helms v. Young,* 130 Ga. App. 344, 348 (203 SE2d 253). " ' "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against

positive and uncontradicted evidence that no such fact exists." '
*Brewer v. Southeastern Fidelity Ins. Co.,* 147 Ga. App. 562 [564 (249
SE2d 668)]." *Withrow Timber Co. v. Blackburn,* 244 Ga. 549, 553
(261 SE2d 361). See also *Robertson v. Lumbermen's Mut. Cas. Co.,*
160 Ga. App. 52, 55 (286 SE2d 305); *International Computer Group v.
Data Gen. Corp.,* 159 Ga. App. 169 (2) (283 SE2d 12); *Backus v. Ray
Jones, Inc.,* 150 Ga. App. 753, 756 (258 SE2d 693); *Brown v. Tucker
Prof. Assoc.,* 139 Ga. App. 740 (3) (229 SE2d 541). "This . . . is a
variant of the rule of *Myers v. Phillips,* 197 Ga. 536, 542 (29 SE2d
700), which held: 'Circumstantial evidence from which the existence
of a fact might be inferred, but which did not demand a finding for the
plaintiff to that effect, will not support a verdict, when by positive
and uncontradicted testimony of unimpeached witnesses, which was
perfectly consistent with the circumstantial evidence relied on by the
plaintiff, it was affirmatively shown that no such fact existed.' "
*Fletcher Emerson Mgt. Co. v. Davis,* 134 Ga. App. 699, 702 (215
SE2d 725). Harkleroad's affidavit unequivocally establishes that
Cleveland did not elect to treat appellant as its tenant. Absent direct
evidence to the contrary or circumstantial evidence necessarily in-
consistent with that testimony, neither of which appears in this case
(compare *Wallace v. Lessard,* 248 Ga. 575 (285 SE2d 14)), appellee is
entitled to summary judgment on the issue of whether appellant had
an insurable interest in the subject buildings.

(f) Appellant's first enumeration of error challenges numerous,
specific "findings of fact" made by the trial court. Inasmuch as the
record demonstrates appellee's entitlement to summary judgment,
the accuracy of each of the trial court's specific "findings of fact" is
irrelevant and will not be addressed herein.

5. Although not addressed by the parties in their briefs, we note
that the subject insurance policy provided limits of $2,500 for damage
to personal property, and that the complaint alleges damage to
appellant's personalty as a result of the fire. The absence of an
insurable interest in the real property would not, of course, preclude
appellant from having a lawful interest in personalty ostensibly
covered under the policies. See *Brown Store Co.,* supra, 121 Ga. 809
(3). Although we cannot determine from the record whether
appellant can prove a recoverable loss of its personalty or whether
appellee has a defense to such a claim, appellee has failed to pierce the
allegations of the complaint with respect to the alleged loss of
personalty. Accordingly, the trial court erred in entering summary
judgment on this aspect of appellant's claim.

6. Appellant's fourth enumeration of error charges that the trial
court erred in failing to sustain appellant's motion to strike and
objections to a letter brief submitted by appellee after hearing on its

motion. Inasmuch as the trial court specifically stated in its order that it did not consider the brief, we fail to see any merit in this enumeration of error.

7. Appellant's fifth enumeration of error challenges the trial court's "failure to rule" on appellant's motion to consider additional evidence. However, the court stated in its order that it did not consider any evidence submitted after a date well in advance of the date appellant submitted the affidavit in question. Consequently, it is clear that the trial court denied appellant's motion. This was not error. "Affidavits opposing the grant of summary judgment 'may be served not later than one day before the hearing unless a different period is fixed by . . . order of the court.' [OCGA § 9-11-6 (d) (Code Ann. § 81A-106)], and see [OCGA § 9-11-56 (c) (Code Ann. § 81A-156)]. The court is vested with a discretion to consider affidavits not so served, and if he does so there is no requirement that a writing to that effect appear in the record. [Cit.] Where he does not in his discretion choose to consider those untimely filed no error appears. [Cits.]" *Willingham v. Bridges,* 165 Ga. App. 35 (1) (299 SE2d 392).

8. As can be seen from the divisions above and except as noted in Division 5, the trial court did not err in granting summary judgment to appellee or in denying appellant's motion for reconsideration.

*Judgment affirmed in part and reversed in part. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED JULY 15, 1983 —
REHEARING DENIED JULY 27, 1983 —

*J. Matthew Dwyer, Jr., Beryl H. Weiner,* for appellant.
*W. Seaborn Jones, Brady D. Green,* for appellee.